556 So.2d 321 (1989)
Myrtis H. WINSTEAD
v.
Eugene Sexton BERRY, Jr.
No. 07-CA-58642.
Supreme Court of Mississippi.
December 6, 1989.
As Modified on Denial of Rehearing February 7, 1990.
Fred A. Ross, Jr., Beach, Luckett and Ross, Jackson, John W. Prewitt, Vicksburg, for appellant.
David L. Ayers, Robert H. Pedersen, James A. Becker, Jr., Watkins & Eager, Jackson, for appellee.
*322 Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This cause orbits two divorce proceedings and the triangular relationship of the ex-wife, an attorney and the ex-husband. Appellant, Myrtis Winstead ("Myrtis"), filed suit against the appellee, Eugene Sexton Berry ("Berry"), in connection with Berry's handling of two separate no-fault divorce proceedings involving Myrtis and her ex-husband, Joe Winstead ("Joe"), filed in Hinds County Chancery Court in January, 1985, and August, 1985.
The appeal is from two separate trials in the lower court. The first trial resulted in a judgment of $175,000.00 ($25,000.00 in actual damages and $150,000.00 in punitive damages) in favor of the plaintiff, Myrtis Winstead. At the request of the defendant, Eugene Sexton Berry, Jr., a new trial was granted.
The second trial resulted in a jury verdict for the defendant. From this verdict, the plaintiff appeals, assigning as issues to be addressed:
1. Whether, in the first trial, the trial judge should have submitted to the jury the issue of whether an attorney-client relationship existed between Myrtis and Berry?
2. Whether the rulings of the lower court, in the second trial, denied Myrtis' right to a fair trial?
Myrtis' complaint was filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi, the Honorable James D. Bell, Hinds County Judge, Circuit Judge by assignment, presiding. Her amended Complaint made four claims:
COUNT I charged Berry with legal malpractice in connection with Berry's negligent and improper representation of Myrtis in the January, 1985, divorce action.
COUNT II charged Berry with legal malpractice in connection with Berry's negligent and improper representation of Myrtis in the August, 1985, divorce action.
COUNT III charged that Berry falsely dated and negligently notarized a Waiver of Process and Entry of Appearance in obtaining a no-fault divorce in January, 1985.
COUNT IV charged that Berry falsely dated and negligently notarized a Waiver of Process and Entry of Appearance in obtaining a no-fault divorce in August, 1985.
The Winsteads' marital roller-coaster began in 1951. This marriage lasted until their first divorce in 1983. Myrtis and Joe remarried in 1984. In January 1985, Berry prepared the necessary papers for their second no-fault divorce which became final on March 21, 1985. On or about May 9, 1985, Myrtis and Joe remarried again. They separated in August, 1985, and Berry, once again, prepared the papers for this, their third divorce. It is from Berry's handling of the second and third divorces that this suit arose.
At trial, Berry testified that he told Myrtis that he represented Joe in the divorce proceedings but that he never advised Myrtis to seek independent counsel. Berry admitted that he intentionally, falsely dated the waivers of process which he had prepared and filed in connection with the two no-fault divorces. As a result of these erroneous waivers, these two divorces were voided and vacated.
Joanna Winstead Cangelosi testified that Myrtis and Joe told her that Berry represented both of them in the same manner that another attorney had done in their first divorce.
Myrtis testified that Berry represented both her and her husband in the divorce proceedings. According to Myrtis, Berry did not advise her to seek independent counsel. The settlement agreements contained disclaimers which stated that Berry represented the husband and that the wife understood this. However, as Myrtis had not read the settlement agreement in its entirety, she was not aware of this provision. Myrtis claimed that she never authorized Berry to misdate the waivers.
Joe testified that he hired Berry as his representative in the divorce proceedings. However, he read from a deposition where he had stated that he had asked Berry to *323 represent both him and his wife in a no-fault divorce. He recalled that Berry had told his wife to seek independent counsel if she desired. According to Joe, Myrtis read the entire settlement agreement and understood that Berry was not her attorney.
After Myrtis concluded her presentation of evidence, Berry moved for a directed verdict, requesting that all claims be dismissed. Initially, this motion was denied and Berry rested without offering any evidence.
During their conference on proposed jury instructions, the trial judge directed a verdict in favor of Berry as to Counts I and II, the allegations of legal malpractice. The case proceeded to judgment on Counts III and IV, with the jury returning a verdict in favor of Myrtis. Actual damages were assessed against Berry in the amount of $25,000.00 and punitive damages were assessed at $150,000.00. Berry's motion for new trial was granted.
Though containing additional medical testimony, evidence presented at the second trial was substantially similar to that presented at the first trial. The trial court determined that Count III should be dismissed because, as Myrtis and Joe had remarried after the second divorce, Myrtis could not have been injured from the voidance of that divorce. As to Count IV, the jury returned a verdict in favor of Berry.

DID THE TRIAL COURT ERR IN DIRECTING A VERDICT THAT AN ATTORNEY-CLIENT RELATIONSHIP DID NOT EXIST BETWEEN THE PLAINTIFF AND THE DEFENDANT?
Myrtis claims that the evidence presented at trial was sufficient to raise an issue of fact as to the existence of an attorney-client relationship. The trial judge directed a verdict in favor of Berry because, in his view, there was "a complete failure of the evidence to show any representation or any attorney-client relationship existing between Eugene Sexton Berry, Jr. and the plaintiff."

MOTION FOR DIRECTED VERDICT
The motion for directed verdict "asks the court to hold, as a matter of law, that the evidence is insufficient to support a verdict in favor of the non-movant plaintiff." White v. Hancock Bank, 477 So.2d 265, 269 (Miss. 1985). In reviewing such a motion, the trial court is bound to consider just the evidence which supports the non-movant's case, along with its favorable inferences. In analyzing a trial court's decision on such a motion, this Court considers the evidence in a light most favorable to the non-movant, accepting as true all favorable inferences which support the non-movant's case. Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988); Smith v. Estate of Gilbert, 498 So.2d 823, 825 (Miss. 1986); Mississippi Farm Bureau Mut. Ins. Co. v. Todd, 492 So.2d 919, 927 (Miss. 1986). The non-movant is given the benefit of all reasonable, favorable inferences that may be drawn from the evidence and contradictory evidence must not be considered. Ladner v. Campbell, 515 So.2d 882, 887 (Miss. 1987).
Implementing these rules of analysis, if the non-movant's evidence is such to allow reasonable jurors to reach differing conclusions, the motion for directed verdict must be overruled. Hammond v. Grissom, 470 So.2d 1049, 1053 (Miss. 1985); Gee v. Hawkins, 402 So.2d 825, 827-828 (Miss. 1981); Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652, 655-657 (Miss. 1975).
The question before this Court is whether Myrtis adduced sufficient evidence at trial to create a question for the jury of whether an attorney-client relationship existed between Myrtis and Berry. The following evidence was presented in support of Myrtis' position:
A. Myrtis testified that she understood that Berry represented both parties and that he did not advise her to seek independent counsel;
B. Joe testified in a deposition that Berry was hired to represent both parties in their divorce;
C. One of their daughters testified that Berry represented Joe and Myrtis in the same manner that another attorney had done in a previous divorce;
*324 D. Berry testified that he never advised Myrtis to seek independent counsel, that he post-dated the waivers as a service to Myrtis, and that Joe and Myrtis were always present together whenever Berry consulted with Joe.
Accepting this testimony as true, and indulging all favorable inferences therefrom, sufficient evidence was presented to create a jury question of whether an attorney-client relationship existed. The trial judge erred in directing a verdict in favor of Berry. Because this Court finds the initial assignment of error meritorious, it is unnecessary to investigate the merits of the other assignment. Therefore, this case is reversed and remanded to the trial court for retrial on Counts I and II of Myrtis H. Winstead's complaint.[1]
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., not participating.
NOTES
[1] Counts III and IV of Myrtis' complaint charge Berry falsely dated and negligently notarized a waiver of process and entry of appearance in obtaining the no fault divorces in January of 1985 and August of 1985. Those two claims are not formally before this Court on appeal in that Myrtis has taken no appeal from the final judgment of the circuit court dismissing those claims with prejudice. On remand, Myrtis may inquire into Berry's handling of the waivers and the notarization of same to the extent, if any, that such matters are relevant to and encompassed within the claims for legal malpractice found in Counts I and II of the complaint.