186 So.2d 756 (1966)
Eugene THOMPSON
v.
ERVING's HATCHERIES, INC.
No. 43906.
Supreme Court of Mississippi.
May 23, 1966.
*757 Gore & Gore, Marks, Satterfield, Shell, Williams & Buford, Jackson, for appellant.
Lomax B. Lamb, Jr., Marks, for appellee.
JONES, Justice.
Appellant, a practicing attorney, was sued by appellee in the Circuit Court of Quitman County. Appellee sought damages, alleging that the negligence of appellant permitted the statute of limitations to run against a suit on open account for $2500 given by William Johnson Garrott.
On trial, the lower court directed the jury peremptorily to find for appellee for the amount sued for ($2500), plus interest and other items.
From this judgment, the case comes here. We affirm as to liability, but reverse and remand as to the amount of damages.
This case is a sequel to Erving's Hatcheries, Inc. v. Garrott, 250 Miss. 701, 168 So.2d 52 (1964). The facts on which the liability of appellant is based are recited in that case, and we deem it unnecessary to repeat them.
Appellant's negligence and legal liability for any damages shown to have been proximately caused thereby are clear.
On the degree of negligence required to be proven in order to recover against an attorney, we are cited only two Mississippi cases: Fitch v. Scott, 4 Miss. (3 How.) 314 (1839), in which our Court relied upon prior English decisions, and held:
"The law implies a promise on the part of attorneys, that they will execute the business entrusted to their professional management, with a reasonable degree of care, skill and despatch, and they are liable to an action, if guilty of a default in either of these duties, whereby their clients are injured. Chitty on Contracts, 166. There must, however, be gross negligence or ignorance, and if the attorney acts to the best of his skill, and with a bona fide degree of attention, he will not be responsible, 4 Burrow's Rep. 2061. This was the rule laid down by Lord Mansfield in the case of Pitt v. Yalden, in which he remarked that, that part of the profession which is carried on by attorneys is liberal and reputable, as well as useful to the public, when they conduct themselves with honor and integrity, and that they ought to be protected when they act to the best of their knowledge and ability. * * *" (4 Miss. at 317-318.)
Grayson v. Wilkinson, 13 Miss. (5 S. & M.) 268 (1845), recognizes the "gross" negligence rule. However, in Annotation, 45 A.L.R.2d section 3, pp. 5, 11-12 (1956), it is stated:
"§ 3. Measure of care and skill required.
(a) Generally.
While occasionally language may be found, especially in the earlier cases, suggesting that an attorney is liable to his client for the conduct of litigation only where he is chargeable with gross negligence or want of skill, it appears to be the presently well-settled rule in most if not all of the American jurisdictions in which the question has arisen that an attorney to whom the conduct of litigation is entrusted may be held liable to his client for damages resulting from his failure to exercise ordinary care, skill, and diligence, or, as it is frequently expressed, that degree of care, *758 skill, and diligence which is commonly possessed and exercised by attorneys in practice in the jurisdiction."
In 7 Am.Jur.2d Attorneys at Law section 168 at 146 (1963), it is stated:
"His duty to his client requires an attorney to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated. He is not bound to exercise extraordinary diligence, but only a reasonable degree of care and skill, having reference to the character of the business he undertakes to do. Within this standard, he will be protected so long as he acts honestly and in good faith.
"Although it has been said that an attorney is liable to his client only for `gross negligence' or `gross ignorance' in the performance of his professional duties, these terms apparently mean only want or absence of reasonable care, skill, and knowledge."
Dean John W. Wade of the Vanderbilt University School of Law, writing in 12 Vanderbilt Law Review 755 (1958-1959), on "The Attorney's Liability for Negligence" by his great number of citations and able analyses thereof, manifests an exhaustive research on this subject. Relative to the degree of negligence required to render an attorney liable, he states:
"There has been universal agreement that a lawyer is not an insurer or guarantor of the correctness of his work or of the results which will be attained. He is liable only for negligent failure to use the requisite care or skill.
"The early cases frequently stated that the attorney is liable only for gross negligence or gross ignorance  often using the Latin phrases, lata culpa and crassa negligentia. This has sometimes been regarded as laying down a different standard of care from that expressed by ordinary negligence. A study of the early English cases, however, raises considerable doubt if a distinction was really intended. This was the formative period of the negligence concept, and the terminology had not become conventional. In the first case where the matter was discussed, Lord Mansfield used the two Latin expressions and referred to gross negligence and ignorance, but his language later in the opinion indicates that he was simply trying to describe `a culpable negligence'  negligence of the type which involves fault. In 1830 Chief Justice Tindall declared that:
It would be extremely difficult to define the exact limit by which the skill and diligence which an attorney undertakes to furnish in the conduct of a cause is bounded; or to trace precisely the dividing line between that reasonable skill and diligence which appears to satisfy his undertaking, and that crassa negligentia, or lata culpa mentioned in some of the cases, for which he is undoubtedly responsible.
There is no indication that a gap may exist between the exercise of reasonable skill and diligence on the one hand and gross negligence on the other; the failure to exercise such skill and diligence was apparently regarded as amounting to gross negligence.
"A few years later Baron Rolfe made his famous statement that he `could see no difference between negligence and gross negligence  that it was the same thing, with the addition of a vituperative epithet * * *.' Some decisions of the House of Lords at this time laid emphasis on the distinction and others ignored it.
"In the meantime the gross-negligence terminology crossed the Atlantic, and there were numerous state decisions which used it. Some of them apparently treated it literally; and others, somewhat *759 more sophisticated, indicated an awareness of the special meaning it had in this connection. In any event, the decisions have now either been overruled or explained away, and on both sides of the Atlantic the term `gross' no longer complicates the statement of the standard of care required of a lawyer." (Wade, The Attorney's Liability for Negligence, 12 Vanderbilt L.J. 760-61 (1959))
If, as a result of negligence or inattention to duty, or negligent delay on the part of the attorney in filing suit, a claim for collection becomes barred by the statute of limitation, he may be held liable. 7 Am.Jur.2d § 176 at 150-51 (1963); 7 C.J.S. Attorney and Client § 144 at p. 981 (1937); and, Annot. 45 A.L.R.2d § 6 at 22 (1956).
The lower court was justified in peremptorily directing the jury that appellant was negligent, but this is not all that is required to be shown to entitle appellee to a judgment. In 7 C.J.S. Attorney and Client § 157 at p. 1000 (1937), it is stated:

"In action for negligence in collecting claim. In a suit by a client against an attorney for negligence in conducting the collection of a claim, whereby the debt was lost, the burden rests on the former to allege and prove every fact essential to establish such liability. He must allege and prove that the claim was turned over to the attorney for collection; that there was a failure to collect; that this failure was due to the culpable neglect of the attorney; and that, but for such negligence, the debt could, or would, have been collected. Hence, where a claim is alleged to have been lost by an attorney's negligence, in order to recover more than nominal damages it must be shown that it was a valid subsisting debt, and that the debtor was solvent."
It is also stated in 7 Am.Jur.2d Attorneys at Law section 188 at 156 (1963):
"In an action against an attorney for negligence or violation of duty, the client has the burden of proving the existence of the relation of attorney and client, the acts constituting the alleged negligence, that the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged. The last element mentioned often involves the burden of showing that, but for the negligence of the attorney, the client would have been successful in the prosecution or defense of an action."
In 7 Am.Jur.2d Attorneys at Law section 190 at 158 (1963), it is further stated:
"A determination that a judgment in a certain amount would have been recovered in the original action but for the attorney's negligence does not entitle the client to recover that amount from the negligent attorney if the judgment in the original action would have been uncollectible against the original defendant be cause of insolvency or other reasons."
In Annotation, 45 A.L.R.2d section 5 at 19 (1956), it is stated:
"The ordinary rule that negligence is actionable only where it is the proximate cause of the damages complained of has frequently been applied in actions against attorneys for alleged negligence in connection with litigation. In such cases the damages claimed are usually the value of the claim lost or judgment suffered as an alleged result of the attorney's negligence, and it has frequently been held that the lawyer may not be found liable unless it appears that if the action had been properly prosecuted or defended the client would have been successful."
Two things other than employment are to be shown: (1) negligence, and (2) a loss proximately resulting therefrom. Fitch v. Scott, supra.
*760 This Court held in Hoover v. Shackleford, 23 Miss. (1 Cush.) 520 (1852), where a verdict for defendant was returned:
"The verdict is fully sustained by the evidence. Indeed, we are of opinion that the plaintiff failed in proving his case. Under the agreement of defendant, the plaintiff should have proved that the makers of the note, which defendant undertook to collect, were able to pay it, or some part thereof; and that a failure to collect resulted from the gross negligence of the defendant. The plaintiff's proof does not come up to this standard, and therefore did not sustain his case." (23 Miss. at 521.)
In the instant case, the matter of damages should have been submitted to the jury for determination of the actual loss proximately sustained as a result of appellant's negligence.
There was evidence indicating insolvency of Mr. Garrott, negotiations and offers of settlement by each party, and there was introduced by plaintiff (although not pled as a defense) proof that Mr. Garrott denied the claim on the allegation that the articles purchased were of inferior quality.
Under the whole record, it was for the jury to fix the amount of actual loss sustained by appellee as a proximate result of appellant's negligence, and we are reversing the case as to this feature so the jury may determine the collectibility and value of the judgment, if it had been obtained.
Affirmed as to liability and reversed and remanded as to question of damages.
Affirmed as to liability; reversed and remanded as to question of damages.
ETHRIDGE, C.J., and RODGERS, SMITH and ROBERTSON, JJ., concur.